In The

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

Appeal Number 22-1942

---

MICHAEL C. WORSHAM
*Plaintiff-Appellant*

v.

DISCOUNT POWER, INC.
*Defendant-Appellee*

*Appeal from the United States District Court for the District of Maryland*
Case #1:20-cv-00008-RDB
The Honorable Richard D. Bennett

---

## INFORMAL BRIEF OF DEFENDANT-APPELLEE DISCOUNT POWER, INC.

---

Brian A. Scotti (Bar # 18249)
Gordon & Rees LLP
1101 King St., Suite 520
Alexandria, VA 22314
Phone: (202) 399-1009
Fax: (202) 800-2999

# TABLE OF CONTENTS

**Page**


Statement of Issues Presented for Review ....................................................... 1

Statement of the Case ....................................................................................... 2

Statement of the Argument ............................................................................... 8

Legal Standard ................................................................................................ 10

Argument ......................................................................................................... 11

I. The district court properly awarded discovery sanctions against Mr. Worsham for his willful failure to appear at his continued deposition and blatant disregard of a Court Order and the Federal Rules of Civil Procedure. ............................................................................ 11

II. The district court properly denied Mr. Worsham's discovery motions. ................................................................................................. 14

A. The district court correctly denied Mr. Worsham's motion to compel discovery. ........................................................ 14

B. The district court properly denied Mr. Worsham's third motion to extend discovery after Mr. Worsham failed to take advantage of the earlier discovery extensions ........................................... 16

C. The Federal Rules of Civil Procedure govern discovery disputes in federal court, not a FCC order. ........................................... 18

III. The district court properly dismissed the majority of Mr. Worsham's Amended Complaint and properly denied treble damages. ................ 18

A. The district court correctly dismissed the majority of the Amended Complaint. ................................................................ 18

B. The district court properly denied treble damages. .................. 19

1. Mr. Worsham's Amended Complaint contains no facts supporting willful or knowing conduct. ......................... 19

2. The district court properly found that Mr. Worsham is

not entitled to treble damages. ....................................... 20

IV. The district court properly dismissed Counts 3 and 7 since there is no private right of action under 47 C.F.R. § 64.1601(e)(1). .................... 21

A. Travel Options was correctly decided. .................................... 21

B. Mr. Worsham cannot point to the "remedial purpose" of the TCPA as a basis for establishing a private right of action under federal regulations. .................................................................. 22

C. Mr. Worsham cannot create a private right under § 64.1601(e) where none exists. .................................................................. 23

D. Other courts have held there is no private right of action under § 64.1601(e). ........................................................................ 24

V. The district court properly dismissed Counts 4 and 8 for failure to state a claim. ......................................................................... 25

VI. The district court properly dismissed Counts 9-17. ............................ 29

A. The district court correctly dismissed Counts 9-11. ................ 29

B. The district court correctly dismissed Counts 12-17. ............... 31

C. Mr. Worsham fails to allege actual damages, as required to recover under the FTC's Telemarketing Sales Rule. ................ 33

D. There is no private right of action under the MDTCPA for violations of the FTC's Telemarketing Sales Rule. .................. 33

VII. The district court properly granted summary judgment on all of Mr. Worsham's remaining claims. ............................................................ 35

A. Discount Power is not liable under Mr. Worsham's novel interpretation of 47 U.S.C. § 227(c)(5) .................................... 35

B. The TPCA does not impose strict vicarious liability on defendants under the non-delegation doctrine. ......................... 36

VIII. Mr. Worsham fails to meaningfully cite to the record in support of his informal brief and thus has abandoned any arguments. ...................... 41

Conclusion ........................................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)....................24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................10

*Armstrong v. Investor's Bus. Daily, Inc.*,
No. CV-18-2134,-MWF-JPRX, 2020 WL 2041935 (C.D. Cal. Mar. 6, 2020)....39

*Bradley v. Dentalplans.com*,
No. CCB-20-1094, 2022 WL 2973979 (D. Md. July 27, 2022)....................36

*Cannon v. Univ. of Chi.*,
441 U. S. 677 (1979)....................23

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003)....................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................10

*Cf. Burdge v. Assn. Health Care Mgmt., Inc.*,
No. 1:08-CV-00509, 2009 WL 414595 (S.D. Ohio Feb. 18, 2009)....................23

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
56 F.3d 556 (4th Cir. 1995).................... 12, 14

*Dean v. Daimler Chrysler Life, Disability & Health Care Benefits Program*,
439 F. App'x 265 (4th Cir. 2011)....................41

*Dobronski v. Selectquote Ins. Servs.*,
462 F. Supp. 3d 784 (E.D. Mich. 2020)....................24

*Finkle v. Howard Cty.*,
640 F. App'x 245 (4th Cir. 2016)....................16

*General Bldg. Contractors Ass'n v. Pennsylvania*,
458 U.S. 375 (1982).................... 37, 38, 39

*Gross v. Morgan State Univ.*,
No. CV JKB-17-448, 2017 WL 11451238 (D. Md. Nov. 8, 2017)......................18

*Gulden v. Consol. World Travel Inc.*,
No. CV-16-01113-PHS-DJH, 2017 U.S. Dist. LEXIS 23350 (Feb. 15, 2017 D. Ariz.) ....................................................................................................30

*Hodgin v. UTC Fire & Sec., Ams. Corp.*,
885 F.3d 243 (4th Cir. 2018) ..........................................................................7, 37

*Hossfeld v. Gov't Emps. Ins. Co.*,
88 F. Supp. 3d 504 (D. Md. 2015)....................................................................38

*Hurley v. Wayne Cty. Bd. of Ed.*,
No. 3:1-16-9949, 2017 WL 2454325 (S.D. W. Va. June 6, 2017).......................30

*In Matter of Long Distance Direct, Inc.*,
15 F.C.C. Rcd. 3297 (2000)..............................................................................41

*In re Joint Petition filed by Dish Network, LLC,*
28 FCC Rcd[. 6584]..........................................................................................38

*In re Monitronics Int'l, Inc. Tel. Consumer Prot. Act Litig.*,
223 F. Supp. 3d 514 (N.D. W. Va. 2016)..............................................................7

*In Re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
18 F.C.C. Rcd. 14014 (2003)..............................................................................23

*Krakauer v. Dish Network, LLC*,
925 F3d 643 (4th Cir. 2019) .......................................................................... 35, 37

*Larson v. Harman Mgmt. Corp.*,
No. 1:16-cv-00219-DAD-SKO, 2016 WL 6298528 (E.D. Cal. Oct. 27, 2016)...27

*Lucas v. Telemarketer Calling from (407) 476-5680 and Other Telephone Numbers*,
No. 1:12-cv-00630, 2013 WL 4536872 (S.D. Ohio Aug. 27, 2013)....................28

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...........................................................................................10

*McDermet v. DirectTV, LLC*,
No. CV 19-11322-FDS, 2021 WL 217336 (D. Mass. Jan. 21, 2021) .................25

*Meyer v. Capital Alliance Grp.*,
No. 15-CV-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017)...............25

*Meyer v. Holley*,
537 U.S. 280 (2003)........................................................................ 37, 38, 39

*Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*,
139 S.W. 3d 342 (Ct. App. Tex. 2004).................................................20

*Petition of Alva S.S. Co., Ltd.*,
616 F.2d 605 (2d Cir. 1980) ......................................................................41

*Ray Comms., Inc. v. Clear Channel Comms., Inc.*,
573 F.3d 294 (4th Cir. 2012) .....................................................................10

*Robinson v. Lorillard Corp*.,
444 F.2d 791 (4th Cir. 1971) .....................................................................40

*Seaside Farms, Inc. v. United States*,
842 F.3d 853 (4th Cir. 2016) .....................................................................12

*Smith v. State Farm Mut. Auto. Ins. Co.*,
30 F. Supp. 3d 765 (N.D. Ill. 2014).......................................................... 38, 39

*State of Maryland v. Universal Elections*,
787 F. Supp. 2d 408 (D. Md. 2011)...........................................................40

*Texas v. Am. Blast Fax, Inc.*,
164 F. Supp.2d 89 (W.D. Tex. 2001) .........................................................20

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979)........................................................................... 22, 24

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979)............................................................................. 23, 24

*United States v. King*,
673 F.3d 274 (4th Cir. 2012) .....................................................................34

*United States v. Manlapaz*,
825 F. App’x 109 (4th Cir. 2020) ........................................................................42

*Wooton v. CL, LLC*,
504 F. App’x 220 (4th Cir. 2013) ........................................................................17

*Worsham v. Accts. Receivable Mgmt. Inc.*,
497 F. App’x 274 (4th Cir. 2012) ........................................................................34

*Worsham v. Direct Energy Servs., LLC*,
No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021).. 7, 22, 28, 33, 34, 36, 37, 38, 40

*Worsham v. Discount Power, Inc.*,
No. 1:20-cv-00008-RDB, 2022 WL 3100762 (D. Md. Aug. 4, 2022). 2, 3, 4, 5, 8, 19, 20, 26, 27, 28, 29, 32, 33, 34, 35, 36, 38, 41

*Worsham v. Ehlrich*,
957 A.2d 161 (Md. Ct. Sp. App. 2008) ........................................................ 31, 34

*Worsham v. Nationwide Ins. Co.*,
138 Md. App. 487 (2001) ....................................................................................36

*Worsham v. Travel Options*,
No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016)......... 21, 22, 23, 33

*Zhu v. DISH Network, LLC*,
808 F. Supp. 2d 815 (E.D. Va. 2011) ..................................................................38

*Ziglar v. Abbasi*,
|582 U.S. ——, 137 S.Ct. 1843 (2017)..................................................................24

**Statutes**

15 U.S.C. § 6104(a) ........................................................................................ 31, 33

15 U.S.C. §§ 6101-6108 ........................................................................................31

47 U.S.C. § 227(b) ........................................................................................... 19, 22

47 U.S.C. § 227(b)(3)...........................................................................................30

47 U.S.C. § 227(c) ........................................................................................... 22, 35

47 U.S.C. § 227(c)(5) ........ 1, 10, 30, 35, 36
47 U.S.C. § 227(d) ........ 30
47 U.S.C. § 227(d)(3) ........ 30
Md. Code Ann., Com. Law § 14-3201(1) ........ 31

**Rules**

Fed. R. App. P. 28 ........ 42
Fed. R. App. P. 28(a)(8)(A) ........ 42
Fed. R. App. P. 28(e) ........ 42
Fed. R. Civ. P. 30 ........ 13
Fed. R. Civ. P. 30(d)(1) ........ 13
Fed. R. Civ. P. 56(a) ........ 10

**Treatises**

16 C.F.R. § 310.1 ........ 31
16 C.F.R. § 310.2(dd) ........ 32
16 C.F.R. § 310.2(ff) ........ 32
16 C.F.R. § 310.3(a)(4) ........ 31
16 C.F.R. § 310.4(a)(8) ........ 31, 32
16 C.F.R. § 310.4(b)(1) ........ 31
16 C.F.R. § 310.4(b)(1)(v) ........ 31
16 C.F.R. § 310.4(d)(1) ........ 31
16 C.F.R. § 310.8(a) ........ 31
45 C.F.R. § 160.103 ........ 26
47 C.F.R. § 64.1200(a)(3) ........ 25, 26

47 C.F.R. § 64.1200(b) ..........................................................................................30

47 C.F.R. § 64.1200(b)(1).........................................................................................29

47 C.F.R. § 64.1200(b)(2).........................................................................................29

47 C.F.R. § 64.1200(b)(3).........................................................................................29

47 C.F.R. § 64.1200(f)(1) .........................................................................................26

47 C.F.R. § 64.1200(f)(12) ................................................................................ 26, 27

47 C.F.R. § 64.1601(e)................................................................... 1, 21, 23, 24, 25

47 C.F.R. § 64.1601(e)(1) ....................................................................... 9, 21, 25

## Statement of Issues Presented for Review

1. Whether the district court properly granted discovery sanctions against Mr. Worsham for Mr. Worsham's willful failure to appear at his continued deposition and blatant disregard of a court order and the Federal Rules of Civil Procedure.

2. Whether the district court properly exercised its discretion in denying Mr. Worsham's motions to extend and compel discovery.

3. Whether the district court properly dismissed the majority of Mr. Worsham's Amended Complaint and claim for treble damages.

4. Whether the district court properly dismissed Counts 3 and 7 of the Amended Complaint since there is no private right of action under 47 C.F.R. § 64.1601(e).

5. Whether the district court properly dismissed Counts 4 and 8 of the Amended Complaint for failure to state a claim.

6. Whether the district court properly dismissed Counts 9-17 of the Amended Complaint for failure to state a claim.

7. Whether the district court properly granted summary judgment to Discount Power on Mr. Worsham's remaining claims, because: (a) Discount Power is not liable under Mr. Worsham's novel interpretation of 47 U.S.C. § 227(c)(5); and (b) vicarious liability under the TCPA is governed by traditional common

law principles of agency.

## **Statement of the Case**

Appellant Michael C. Worsham, a disbarred attorney currently appearing *pro se*, filed suit against Discount Power, Inc. ("Discount Power"), alleging violations of federal and state telephone consumer protection statutes, including the Telephone Consumer Protection Act ("TCPA") and the Maryland Telephone Consumer Protection Act ("MDTCPA"). *Worsham v. Discount Power, Inc.*, No. 1:20-cv-00008-RDB, 2022 WL 3100762, at **1-2 (D. Md. Aug. 4, 2022) (Mem. Opinion on parties' Motions for Summary Judgment); *Worsham v. Discount Power, Inc.*, No. 1:20-cv-00008-RDB, 2021 WL 3212589, at **1-7 (Mem. Opinion on Discount Power's Motion to Dismiss Amended Complaint).

Discount Power is a Connecticut corporation that provides energy services to customers. *Worsham*, 2022 WL 3100762, at *2. Discount Power contracts with third-party vendors, including Hound Energy, LLC, and AGR Group, LLC, to advertise energy service discounts by calling prospective consumers. *Id.* Discount Power exercises no control over these vendors' telemarketing activities, or the hiring, management, and termination of their employees. *Id.*

Mr. Worsham alleges that between November 11-15, 2019, he received seven telephone phone calls to his "residential" telephone number (410) 692-2749.[1] *Id.*

[1] The subject "*residential*" telephone number was published to the world, including

Mr. Worsham did not answer Call 1. Mr. Worsham alleges that Calls 2-7 included prerecorded solicitations with robocall messages:

Call 2: "Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a rebate check along with a 30% discount on your electric and gas bill. Please press one to get your rebate check."

Calls 3-5: "Hello thank you for being a valued customer of BGE, also known as Baltimore Gas and Electric. The following is an important update regarding your account. Starting this month all current customers who have not missed any payments in the past 6 months will now be eligible for a discount for up to 30% off of their monthly bill. If you would like to check your eligibility, simply press one on your phone now."

Call 6: "Hello. This is an apology call from your electric utility. You got overcharged by your third party supplier. You will be receiving a $100 bill adjustment, along with a 40% discount on your electric and gas bill. Please press 1 to adjust $100 in your bill. Please press 1 now."

Mr. Worsham alleges that he spoke to a telemarketing agent named "Joselyn" during Calls 3, 4, 5, and 7. *Id*. According to Mr. Worsham, "Joselyn" identified

---

on PACER, as a law *firm/business* telephone number prior to (and after) Mr. Worsham allegedly receiving the calls in November 2019. *See* ECF 285 at 5-7 ECF 277-1 at 15-17; ECF 277-2; ECF 277-3; 2022 WL 3100762, at *4 n.3.

herself as a representative of Discount Power in these calls, and provided Discount Power's customer service hotline, even though neither Discount Power or any of its dialers have any employees by the names of Joselyn or Jocelyn. *Id*. at **2 and 3.

Mr. Worsham filed his initial 17-Count Complaint in the Circuit Court of Harford County, Maryland, on November 25, 2019, alleging four violations of the federal TCPA (Counts 1–4), and 13 violations of the MDTCPA (Counts 5–17). Id. at *2. Following removal to the district court and dismissal without prejudice, Mr. Worsham filed an operative Amended Complaint on May 13, 2021, seeking $77,000–$40,500 in statutory damages for the alleged TCPA violations, and $36,500 in statutory damages for the alleged MTCPA violations. *Id*. Discount Power filed a second motion to dismiss (ECF No. 64), and the district court granted that motion as to Counts 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, dismissing those Counts with prejudice.[2] *Id*. Worsham's only surviving causes of action at summary judgment were Counts 1 and 5, relating to the presence of the telephone number on the FCC's National Do-Not-Call List; and Counts 2 and 6, relating

[2] Counts 2 and 6 were also dismissed with prejudice. *See* ECF 74 (July 29, 2021 Mem. Ord. at 1-2 and 7-8). However, the district court granted Mr. Worsham's Motion to Reconsider the dismissal of those counts in light of intervening authority and reinstated Counts 2 and 6. *See Worsham v. Discount Power*, 2022 WL 3100762, at *2 n.2.

to Discount Power's alleged failure to provide identifying information as required by FCC regulations. *Id*.

It is irrefutable that Mr. Worsham does not know who made the calls to the subject telephone number. Mr. Worsham admits that the telephone number that he alleges was transmitted on five of the seven calls, (201) 285-8284, is *not* a Discount Power number. *See* ECF 54 (Am. Compl. at ¶ 18). Instead, DPI contracts with third-party callers, all of whom are independent contractors, to make calls on its behalf to current and prospective customers. *See* ECF 277-4, Ex. C at ¶ 5. Discount Power does not control any aspect of the third-party dialers' hiring, supervisory, disciplinary, or termination practices of the third-party dialers' employees. *See* ECF 177-4, Ex. C at ¶ 6); nor does DPI control any aspect of the third-party dialers' methods of performing their duties and responsibilities for DPI. See ECF 277-4, Ex. C at ¶ 7.

After receiving Plaintiff's Complaint, Discount Power conducted an investigation into Plaintiff's allegations. *See* ECF 277-4, Ex. C at ¶ 8. During its investigation, Discount Power learned that none of its third-party dialers calling in Maryland have records concerning the subject telephone number (410) 692-2749. *See* ECF277-4, Ex. C at ¶ 9. Discount Power's dialers calling in Maryland also do not have any employees or representatives by the names of Jocelyn, Joselyn, or Michael, the same names allegedly provided by the callers as alleged in the

Amended Complaint. *See* ECF 277-4, Ex. C at ¶ 10; ECF 54 (Am. Compl.) at ¶ 15.3, 15.4, 15.5, 15.6, 15.7.

Discount Power engaged AGR Group and Hound Energy as independent contractors to conduct dialing in Maryland in 2019. *See* ECF 277-5, Ex. D (DPI Interrogatory Response, #18). AGR Group previously stated in a sworn declaration that it did not call the subject telephone number on behalf of DPI. *See* ECF148 at 1-5 (AGR Group Opposition); ECF 148-2 at ¶ 6 (AGR Group Declaration stating "AGR has no records of any calls to the telephone number (410) 692-2749." *See also* ECF No. 178 at 1 (Letter Order Denying Plaintiff's Motion to Compel to AGR Group) ("Non-party AGR responded to Plaintiff's subpoena with facts demonstrating that it did not call Plaintiff's telephone number during the relevant time period or, for that matter, at any time within the past ten years.")). Hound Energy also stated in a sworn declaration that it did not call the subject telephone number on behalf of DPI. *See* ECF 277-6, Ex. E (Hound Energy Declaration) at ¶¶ 5-7 ("Hound Energy has no records of any calls to, and has never called, has no knowledge of any person calling, (410) 692-2749)). DPI also submitted a sworn verification to the district court that after locating and reviewing recordings from Hound Energy for the dates at issue, no calls to Plaintiff or the subject telephone number were found. *See* ECF 277-7, Ex. F; ECF 240; ECF No. 255 at 5. DPI also produced records to Plaintiff showing its dialers did not call the subject number on

the dates alleged in the Amended Complaint. See ECF 277-8, Ex. G (DPI19-29)). Discount Power further added the subject telephone number to its internal do-not-call registry on March 28, 2018, well before the November 2019 calls at issue. *See* ECF 277-8, Ex. G (DPI18). Finally, Discount Power's marketing script is vastly different than what Plaintiff alleges he heard as alleged in his Amended Complaint. Compare ECF 277-8, Ex. G at DPI 16-17 (DPI telemarketing script) with ECF 54 (Am. Compl.) at ¶ 15).

The only evidence Mr. Worsham offers in support of his contention that Discount Power called the subject number in a handful of the seven calls is the fact that Discount Power was mentioned in the call. However, the mere mention of a defendant's name in a call is insufficient to establish liability under the TCPA. *Hodgin v. UTC Fire & Sec., Ams. Corp.*, 885 F.3d 243 (4th Cir. 2018); *see also In re Monitronics Int'l, Inc. Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 527 (N.D. W. Va. 2016).[3]

At the close of discovery, Discount Power moved for summary judgment on all of Mr. Worsham's claims. ECF 277. Mr. Worsham also moved for summary

[3] In another TCPA/MDTCPA litigation, Mr. Worsham conceded this point. *See Worsham v. Direct Energy Servs., LLC*, No. 1:20-cv-00193-SAG (D. Md. 2021) (ECF 62 at 5) ("Direct Energy has cited *Hodgin v. UTC Fire & Sec., Ams. Corp.*, 885 F.3d 243 (4th Cir. 2018) for the proposition that a call that mentions a seller's product does not automatically create vicarious liability for a seller who did not place the calls . . . *the proposition is actually correct*.") (emphasis added).

judgment. ECF 276. The district court granted Discount Power's summary judgment motion, denied Mr. Worsham's summary judgment motion, and entered judgment in favor of Discount Power. ECF 302 and 303; *Worsham v. Discount Power*, 2022 WL 3100762. Mr. Worsham then appealed the district court's summary judgment order, discovery and other orders.

## Statement of the Argument

Mr. Worsham's claims and appeal are substantively deficient and the summary judgment and motion to dismiss orders were properly granted by the district court below. Mr. Worsham appeals the district court's issuance of discovery sanctions. Mr. Worsham does not mention that: (1) he reneged on his agreement to continue his deposition that he abruptly ended because of his entertainment engagement, (2) willfully refused to appear at the continued deposition, and (3) shirked a district court order and the Federal Rules of Civil Procedure concerning Mr. Worsham's deposition.

Mr. Worsham complains the district court improperly denied his motion to compel. The district court did not abuse its discretion in denying the motion to compel, which sought information disproportionate to the needs of the case. Mr. Worsham also complains that the district court improperly denied his motion to extend discovery, but fails to mention that it was his *third* motion to extend discovery and he had more than ample time to conduct discovery in this action.

Mr. Worsham disagrees with the district court dismissing the original Complaint, the majority of the Amended Complaint and his claim for treble damages. Whether the district court improperly dismissed the original Complaint is immaterial since Mr. Worsham was afforded an opportunity to file an amended complaint and Mr. Worsham did in fact file an Amended Complaint. The district court properly dismissed the majority of the claims in the Amended Complaint and Mr. Worsham's claim for treble damages since he did not allege facts supporting willful or knowing conduct.

Mr. Worsham complains that the district court improperly dismissed Counts 3 and 7 of the Amended Complaint. The district court correctly dismissed Counts 3 and 7 as there is no private right if action under 47 C.F.R. § 64.1601(e)(1) and Mr. Worsham cannot create a private right of action where none exists.

Mr. Worsham quibbles with the district court's dismissal of Counts 4 and 8, claiming he plead facts in support of violations of the FCC robocall regulations. The district court articulated multiple grounds for dismissing these claims in its well-reasoned and thorough opinion.

Mr. Worsham argues that the district court improperly dismissed Counts 9-17 and rehashes a previously rejected argument by this Court in 2012 and 2021. The district court properly dismissed Counts 9-17.

Mr. Worsham claims that the district court improperly granted summary

judgment on his remaining claims. First, Discount Power is not liable under Mr. Worsham's novel interpretation of 47 U.S.C. § 227(c)(5). Second, the TCPA does not impose strict vicarious liability under the non-delegation doctrine. The district court properly entered summary judgment in favor of Discount Power.

## Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a district court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party shoulders the initial burden of identifying evidence or the elements of the claim in the pleadings to which the moving party "believes demonstrates the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Then, the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor. Id. at 322-25. On appeal, the granting of summary judgment is reviewed de novo. *See Ray Comms., Inc. v. Clear Channel Comms., Inc.*, 573 F.3d 294, 299 (4th Cir. 2012).

# <u>Argument</u>

**I. The district court properly awarded discovery sanctions against Mr. Worsham for his willful failure to appear at his continued deposition and blatant disregard of a Court Order and the Federal Rules of Civil Procedure.**

Mr. Worsham (incredibly) argues that the district court erred when it issued sanctions against him for his reprehensible conduct and actions in this litigation. Specifically, Mr. Worsham argues that the district court erroneously awarded discovery sanctions without reviewing or requesting the deposition transcript containing the testimony for which the sanctions were awarded. *See* Br. at 44. Mr. Worsham omits the fact that he willfully refused to participate in a continued deposition (after previously agreeing to do so when he abruptly announced during that initial deposition that he had leave), then blatantly disregarded a Court order directing him to schedule a mutually agreed upon date to continue the deposition, then refused to appear for the continued deposition. Mr. Worsham's conduct and actions warranted discovery sanctions.

Mr. Worsham was originally deposed on February 11, 2022. ECF 267 at 1. Mr. Worsham's deposition was cut short due his prior, self-imposed "entertainment engagement" that Mr. Worsham only announced near the end of his deposition. *Id.* At the time, Mr. Worsham agreed to a continuation of his deposition, but ultimately reneged. Despite his agreement, Mr. Worsham resisted attempts to reschedule the continued deposition such that Discount Power was forced to unilaterally schedule

it for March 30, 2022, two days before the close of discovery. *Id*. "[Mr. Worsham] ultimately responded to [Discount Power] that he had not nothing more to provide and would not agree to appear for the continuation (despite his prior agreement to do so) absent a court order." *Id*. Mr. Worsham claimed that the continuance would be excessive and would not yield any additional information, but never moved for a protective order. *Id*. at 2. Instead, Mr. Worsham failed to appear, insisting on a court order before he would do so. *Id*. The district court entered such an order, but Mr. Worsham still did not appear. *Id*. Mr. Worsham's failure to appear was unjustified, in bad faith, and in violation of an order of the district court. *Id*. Mr. Worsham's conduct and actions warranted discovery sanctions. *See* ECF 283 at 3.

"The scope and conduct of discovery are within the sound discretion of the district court." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co*., 56 F.3d 556, 568 n.16 (4th Cir. 1995); *Seaside Farms, Inc. v. United States*, 842 F.3d 853 (4th Cir. 2016). Mr. Worsham's simple discontent with discovery sanctions entered against him for his indisputable rogue and reckless behavior is not a basis to challenge the propriety of discovery sanctions on appeal. Contrary to Mr. Worsham's arguments, (Br. at 44-45), the district court was not required to review the original deposition transcript, and Discount Power was not required to identify the topics that Mr. Worsham prevented it from questioning him about at his initial deposition. In reality, (1) Mr. Worsham only announced at the end of the intial deposition that he

had to leave the deposition because of his prior entertainment engagement; (2) Mr. Worsham initially agreed to a deposition continuation (given his unilateral declaration that he had to leave the deposition), but reneged on that agreement; (3) Mr. Worsham flouted the district court's order and Federal Rules of Civil Procedure; and (4) a deposition is limited to one day of seven hours under Fed. R. Civ. P. 30. *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."). As the district court stated, "[Mr.] Worsham's persistent refusal to complete his deposition after being ordered by this Court provides a reason, not an excuse, for the sanctions now issued against him." ECF 283 at 4.

Equally unavailing is Mr. Worsham's argument that the Magistrate Judge's discovery sanctions order was procedurally deficient. Br. at 45. First, the issue is not fully briefed and for this reason this Court should disregard it. Even if considered, however, the district court did not violate any discovery procedures and the district court already considered and rejected this tired argument. ECF 283 at 4. Discount Power acted in good faith in attempting to reschedule Mr. Worsham's deposition, which Mr. Worsham agreed to during his deposition and then he subsequently changed his position and refused to participate. Mr. Worsham even refused to comply with a court order to meet and confer on a mutually agreed deposition date and attend the continued deposition. Mr. Worsham's reprehensible

conduct stymied discovery and multiplied the proceedings. Accordingly, the district court properly entered discovery sanctions against Mr. Worsham. *See* ECF 267 and 283.

## II. The district court properly denied Mr. Worsham's discovery motions.

### A. The district court correctly denied Mr. Worsham's motion to compel discovery.

The district court properly denied Mr. Worsham's motion to compel discovery concerning interrogatory 11 and document requests 2 and 15. "The scope and conduct of discovery are within the sound district court." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003). The district court did not abuse its discretion in denying Mr. Worsham's motion to compel discovery concerning interrogatory 11 and document requests 2 and 15.

Interrogatory 11 requested the identity of "all persons responsible for ensuring that calls made by [Discount Power] or on [Discount Power's] behalf are not made to number on the National Do Not Call Registry. ECF 228 at 2; ECF 144 at 1. Magistrate Judge Coulson ruled that Discount Power need not supplement this interrogatory, as it presupposed that Discount Power placed the alleged calls. ECF 228 at 2; ECF 144 at 1. Mr. Worsham (incorrectly) argued that Discount Power may be liable for calls by an agent under the TCPA. ECF 228. District court Judge Bennett properly rejected Mr. Worsham's argument, finding that, irrespective of

whether Discount Power may be liable for telemarketing calls made on its behalf, it would not be required to supplement a response predicated on an assertion that it previously denied. ECF 228 at 2. Since Discount Power denied that any calls were made on its behalf, it was not required to disclose the identity of the individuals responsible for handling those calls. ECF 228 at 2. The district court properly denied Mr. Worsham's motion to compel concerning interrogatory 11.

Document Requests 2 and 15 sought communications and telemarketing scripts Discount Power provided to its alleged telemarketers. ECF 228 at 2-3; ECF 144 at 2-3. As to Request 2, which sought communications with any person conducting telemarketing on behalf of Discount Power, Judge Coulson limited the scope to communications with "any person or entity who made such calls during the relevant timeframe of November 11-15, 2019, in Maryland's 410 area code." ECF 228 at 3 (quoting ECF No. 144 at 2-3). Similarly, as for Document Request 15, which sought communications between Discount Power and its telemarketers, Judge Coulson ordered Discount Power to "supplement with any telemarketing script or message [Discount Power] provided to either entity that would have been applicable to the seven calls at issue during the relevant timeframe in Maryland's 410 area code, documents related to the investigation done by Mr. Flood as attested in his declaration." ECF 144 at 3. Mr. Worsham argued (then and now) that the five-day time period is too narrow. Mr. Worsham's arguments are unavailing. The district

court's order required Discount Power to disclose all communications to any entity who made telemarketing calls during the relevant time period – it did not limit Discount Power's disclosure to communications made during that five-day window. ECF 228 at 3. The district court properly found that this constraint was "proportional to the needs of the case," and adequately calibrated to capture any communications relevant to the alleged calls. ECF 228 at 3. Mr. Worsham's discovery requests were vastly disproportionate to the needs of the case concerning a mere seven alleged calls.

It was well with the district court's discretion to deny Mr. Worsham's overbroad and disproportional discovery requests. Mr. Worsham's discovery requests were vastly disproportionate to the needs of the case concerning a mere seven alleged calls. *See, e.g., Finkle v. Howard Cty.*, 640 F. App'x 245, 247 (4th Cir. 2016) (affirming district court's discovery ruling and holding that party's discovery request was overbroad when it "was not limited to the information contained in those accounts relevant to her claims.").

### B. The district court properly denied Mr. Worsham's third motion to extend discovery after Mr. Worsham failed to take advantage of the earlier discovery extensions.

The district court correctly denied Mr. Worsham's *third* motion to extend discovery. Mr. Worsham had more than ample time to conduct and discovery during

the 17-months the parties litigated this case.[4] Moreover, Magistrate Judge Coulson dedicated five-pages overviewing the myriad of reasons denying Mr. Worsham's *third* motion to extend discovery.[5] ECF 242. Mr. Worsham's claim that the district court should have extended discovery concerning interrogatory 11 and document requests 2 and 15 should be rejected for the same reasons already rejected by the district court. Mr. Worsham's discovery failures are his own doing and do not form a proper basis for appeal.

A district court does not abuse its discretion in denying a party's *third* motion to extend discovery when the party failed to take advantage of a prior discovery extension. *See Wooton v. CL, LLC*, 504 F. App'x 220, 224 (4th Cir. 2013) (affirming district court's denial of motion to extend discovery where appellant 'failed to diligently use the additional time allowed [by an earlier extension of discovery] to complete the necessary discovery."). The district court properly denied Mr. Worsham's *third* motion to extend discovery when Mr. Worsham failed to take advantage of prior discovery extensions. *See Wooton*, 504 F. App'x at 223.

---

[4] Discount Power removed the action to federal court on January 2, 2020. *See* ECF 1. The district court granted Discount Power's motion for summary judgment and entered judgment in favor of Discount Power on August 4, 2022. *See* ECF 302 and 303.

[5] *See* ECF 140 (Dec. 20, 2021), 191 (Jan. 20, 2022), and 222 (Feb. 14, 2022) (Mr. Worsham's motions to extend discovery).

### C. The Federal Rules of Civil Procedure govern discovery disputes in federal court, not a FCC order.

Mr. Worsham improperly cites to and relies on a FCC order in support of his motion to compel discovery. *See* Br. at 38-39. "To compel discovery, litigants must rely upon the Federal Rules of Civil Procedure." *Gross v. Morgan State Univ.*, No. CV JKB-17-448, 2017 WL 11451238, at *2 (D. Md. Nov. 8, 2017). Mr. Worsham (incorrectly) argues that a FCC order establishes the standard for "the **minimum** evidence that a consumer should be allowed to acquire in discovery." Br. at 38 (emphasis in original). Mr. Worsham cites no authority for the proposition that a FCC ruling guides discovery in federal court. The Federal Rules of Civil Procedure guide the district court in these matters. *See Gross*, 2017 WL 11451238, at *2 (citation omitted) (rejecting party's reliance on federal criminal statute and Rules of Professional Conduct in discovery dispute, noting that "pro se litigants such as [the plaintiff] must . . . adhere to the rudimentary dictates of civil procedure.").

## III. The district court properly dismissed the majority of Mr. Worsham's Amended Complaint and properly denied treble damages.

### A. The district court correctly dismissed the majority of the Amended Complaint.

Mr. Worsham argues that the district court erroneously dismissed the entire original Complaint, almost the entire Amended Complaint, and claims for willful or knowing violations. *See* Br. at 8-19. Mr. Worsham is wrong.

Preliminarily, while Discount Power believes that the district court properly

dismissed the original Complaint, it is immaterial since the district court permitted Mr. Worsham to file an amended complaint. Mr. Worsham did in fact file an Amended Complaint. *See* ECF 54 (Am. Compl.). The district court properly dismissed the majority of the Amended Complaint for the reasons specified in the district court's well-reasoned and thorough opinion, (*see Worsham v. Discount Power*, 2021 WL 321589, at **3-7), and as further discussed in §§ IV –VI of this Brief. The district court also properly granted summary judgment on the remaining counts in the Amended Complaint. S*ee Worsham v. Discount Power*, 2022 WL 3100762.

**B. The district court properly denied treble damages.**

Mr. Worsham also argues that the district court erroneously dismissed his treble damages claim under 47 U.S.C. § 227(b) because Discount Power (allegedly) willfully or knowingly violated the TCPA and FCC regulations.[6] Br. at 9-19. Mr. Worsham is wrong.

**1. Mr. Worsham's Amended Complaint contains no facts supporting willful or knowing conduct.**

Mr. Worsham's Amended Complaint, under the section titled "Willful and Knowing Conduct Allegations," asserts fourteen (14) paragraphs in support of Mr.

---

[6] The Court also dismissed Mr. Worsham's claims for attorneys' fees. *See Worsham v. Discount Power*, 2021 WL 3212589, at *6. It is hard to fathom how an admitted pro se, disbarred attorney could possibly claim attorneys' fees in an action. *See id*.

Worsham's claim that Discount Power willfully and knowingly violated the TCPA and/or MDTCPA. *See* ECF 54 (Am. Compl.), ¶¶ 54–67. Incredibly, there is not a single *fact* alleged in any of those paragraphs. Instead, based on conjecture and speculation, Mr. Worsham makes bald, unsupported claims. Mr. Worsham's allegations are reckless and do not pass any pleading standard. The district court properly held that Mr. Worsham failed to plead any facts to support his allegations that Discount Power willfully or knowingly violated the TCPA. *See Worsham v. Discount Power*, 2021 WL 3212589, at *6. The district court provided further analysis when it denied Mr. Worsham's motion for reconsideration concerning dismissal of his treble damages claim. *See* ECF 137 at 13-14.

**2. The district court properly found that Mr. Worsham is not entitled to treble damages.**

Mr. Worsham's claim for treble damages was properly dismissed by the district court. *See id*. Federal courts have held that "willful or knowing" for purposes of the TCPA requires that the defendant have reason to know that its conduct was a violation of the TCPA. *See, e.g.*, *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp.2d 892, 899 (W.D. Tex. 2001); *Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W. 3d 342, 346 (Ct. App. Tex. 2004) (concluding the "TCPA is willfully or knowingly violated when the defendant knows of the TCPA's prohibitions" and violates the Act notwithstanding such knowledge.) Here, putting aside that Mr. Worsham did not allege any facts that Discount Power actually made the calls at

issue, the Amended Complaint is devoid of any factual allegations that Discount Power knowingly or willfully violated the TCPA.  The district court correctly dismissed Mr. Worsham's treble damages claim.

## IV. The district court properly dismissed Counts 3 and 7 since there is no private right of action under 47 C.F.R. § 64.1601(e)(1).

### A. *Travel Options* was correctly decided.

Surveying several orders from the FCC, *Travel Options* quoted the FCC's order implementing its caller ID regulations, reasoning, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers."  2016 WL 4592373, at *4 (quoting Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 FR 44144-01, ¶ 65).  In other words, the fact that consumers now would have caller ID information for a caller might assist them in vindicating *their* do-not-call rights (because unlike before, now they have the caller's number).  *Travel Options* observed that "the FCC's rule in § 64.601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c [i.e., support their other, pre-existing do-not-call rights], rather than to *create* a separate mechanism upon which a consumer can make an actionable claim."  *Id*.  (emphasis in original).  Contrary to Mr. Worsham's position that *Travel Options* was uncertain and incorrect about § 64.1601(e)(1), the above reasoning is logical insofar as the FCC might establish new regulations, such that consumers have more information to pursue their pre-existing

rights, rather than "creat[ing] a separate mechanism upon which a consumer can make an actionable claim." *Travel Options*, 2016 WL 4592373, at *4.

### B. Mr. Worsham cannot point to the "remedial purpose" of the TCPA as a basis for establishing a private right of action under federal regulations.

Mr. Worsham states that "[t]he FCC usually does not identify which subsection(s) of the TCPA that its authority to promulgate its TCPA regulations is based on[,]" Br. at 21, then spends several pages quoting or block quoting various provisions of FCC orders. *See* Br. at 21-24. Mr. Worsham appears to argue that because some provisions of the TCPA, intended to protect consumers, have a private right of action, and a caller ID provision is related to the "purpose of the TCPA," Br. at 23, which is a "remedial consumer protection statute." Br. at 24, then there is a private right of action under the TCPA. "While the TCPA is a remedial statute, its remedial purpose does not justify reading a provision 'more broadly than its language and the statutory scheme reasonably permit.'" *Worsham v. Direct Energy*, 2021 WL 948819, at*3 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).

Further, the caller ID technology does not fit neatly into focus of either § 227(b) or (c) , "neither of which requires the use of such technology to accomplish their respective purpose[s]" and "[i]t seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations

and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e)[.]" *Worsham v. Travel Options*, 2016 WL 4592373, at *4.

Significantly, Mr. Worsham cites key language from the FCC's orders that undercuts his position. For example, the FCC stated that Caller ID should "provide an important resource for the FCC and FTC in pursuing enforcement actions against TCPA and TSR violators." Br. at 22 (citing *In Re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, ¶ 179 (2003)). This language suggests that the FCC intended only that regulators and law enforcement have the power to enforce this provision. *Cf. Burdge*, 2009 WL 414595, at *3 ("The enforcement of the identification requirements is within the province rather of state attorneys general and the Federal Communications Commission.").

### C. Mr. Worsham cannot create a private right under § 64.1601(e) where none exists.

Where a statutory scheme and its implementing regulations have expressly created a private right of action, but have not expressly done so elsewhere in the same scheme, it is "highly improbable" that Congress—or here, the FCC—"absent mindedly forgot to mention an intended private action." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) (internal quotation and citation omitted); *see also Cannon v. Univ. of Chi.*, 441 U. S. 677, 717 (1979) (stating that

where Congress "intends private litigants to have a cause of action," the "far better course" is for Congress to confer that remedy in explicit terms). If the statute itself does not "displa[y] an intent" to create "a private remedy," then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001); *see also Transamerica Mortg. Advisors, Inc.*, 444 U. S. at 15-16, 100 S.Ct. 242. The Supreme Court has held that the judicial task is instead "limited solely to determining whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington*, 442 U. S. 560, 568 (1979). "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 582 U.S. ——, 137 S.Ct. 1843, 1855-56 (2017). Section 64.1601(e) does not create a private right of action, and this Court should reject Mr. Worsham's invitation to infer a private right of action where § 64.1601(e) is silent on the matter. *See* Br. at 19-26. Mr. Worsham's request for this Court to engraft a private right of action where none exists, and essentially speak for Congress and the FCC, should be rejected. *See* Br. at 24-25.

### D. Other courts have held there is no private right of action under § 64.1601(e).

Other courts considering this issue have held there is no private right of action under § 64.1601(e). *See, e.g., Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020); *Meyer v. Capital Alliance Grp.*, No. 15-CV-2405-

WVG, 2017 WL 5138316, at **16-17 (S.D. Cal. Nov. 6, 2017); *see also McDermet v. DirectTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *13 n.14 (D. Mass. Jan. 21, 2021) (citation omitted) ("it is doubtful that a private right of action exists for violations of" § 64.1601(e)(1)). Mr. Worsham cites no authority directly holding to the contrary or suggesting that these cases were all wrongly decided. Accordingly, this Court should affirm the district court's holding that there is no private right of action under § 64.1601(e) and dismissal of Counts 3 and 7.

## V. The district court properly dismissed Counts 4 and 8 for failure to state a claim.

Mr. Worsham argues that the district court erroneously dismissed Counts 4 and 8, claiming he plead facts in support of violations of FCC robocall regulations. Br. at 27-32. Mr. Worsham is wrong. The district court properly dismissed Counts 4 and 8.

In Counts 4 and 8, Mr. Worsham alleges that Discount Power violated the TCPA, and by extension the MDTCPA, when it violated FCC regulation 47 C.F.R. § 64.1200(a)(3). (ECF No. 54 ¶¶ 72, 73, 77). Section 64.1200(a)(3) prohibits a person from initiating:

> any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call[:] (i) Is made for emergency purposes; (ii) Is not made for a commercial purpose . . .; (iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing . . . ; (iv) Is made

> by or on behalf of a tax-exempt nonprofit organization . . . ; or (v) Delivers a “health care” message made by, or on behalf of, a “covered entity” or its “business associate,” as those terms are defined in the HIPPA Privacy Rule, 45 CFR § 160.103. . . .

47 C.F.R. §64.1200(a)(3).

The district court properly found that Mr. Worsham failed to properly plead facts that the alleged calls did not fall within (iii), where a call is made “for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing.” *Worsham v. Discount Power*, 2021 WL 3212589, at *5. In its well-reasoned and thorough opinion, the district court explained that the “FCC regulations define advertisement as ‘any material advertising the commercial availability or quality of any property, goods, or services.” 47 C.F.R. § 64.1200(f)(1). Similarly, they define ‘telemarketing’ as ‘the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.’ 47 C.F.R. § 64.1200(f)(12).” *Id*. The district court properly held that Mr. Worsham failed to state a plausible claim with respect to a discount or rebate on his already-purchased and paid-for electrical services and how this constituted an advertisement or telemarketing within the meaning of these definitions. *Id*.

The district court highlighted that courts have held that coupons and discounts may be “advertisements” within the meaning of the TCPA where they “plausibly appear to both advertise the availability and of and encourage the

purchase of particular goods." *Id*. (quoting *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2016 WL 6298528, at *4 (E.D. Cal. Oct. 27, 2016)). The district court correctly found that Mr. Worsham failed to allege any facts supporting his claim that the messages encouraged purchase of any products or services, and properly dismissed Counts 4 and 8 of his Amended Complaint.

Additionally, the district court correctly found that Mr. Worsham's Amended Complaint did not provide well-plead allegations that Discount Power actually initiated the calls to his telephone number. *Worsham v. Discount Power*, 2021 WL 3212589, at *5. For example, with respect to Call 1, Mr. Worsham asserts that he did not answer the call and that there was no message. *Id*. (citing ECF 15, Am. Compl., ¶ 15.) Similarly, the Amended Complaint asserts that two of the calls stated the call was from the recipient's "electric utility," and three others were seemingly from Baltimore Gas & Electric. *Id*. The prerecorded messages did not include any statement that the calls were from Discount Power. *Id*. Instead, Mr. Worsham contends that when he dialed "1" as instructed, he was connected to live representatives. *Id*. Mr. Worsham further asserts that, with respect to two of these calls, he could not get the representative to provide a name of his or her employer or a number for that employer. *Id*. With respect to the others, Mr. Worsham asserts that either the representative said he or she worked for Discount Power, or that he asked if the representative worked for Discount Power and he or she responded

"yes." *Id*. These facts alleged do not support Mr. Worsham's conclusory allegations that Discount Power initiated the prerecorded calls—which Mr. Worsham also conclusory alleges constituted telemarketing or advertisements. The district court properly dismissed Counts 4 and 8.

Mr. Worsham's reliance on *Lucas v. Telemarketer Calling from (407) 476-5680 and Other Telephone Numbers*, No. 1:12-cv-00630, 2013 WL 4536872, at *3 n.4 (S.D. Ohio Aug. 27, 2013) is misplaced since the case is easily distinguishable. First, in *Lucas* the telephone numbers from which the ten calls to plaintiff containing a pre-recorded telemarketing message originated were assigned to defendant Qall Cord on the dates in question (*id*.), unlike here, where there is no evidence that Discount Power called Mr. Worsham. Second, by his own admission, Mr. Worsham alleged in his Amended Complaint that he received calls from different numbers, but again there is no evidence that Discount Power made the calls. *See* ECF 15, Am. Compl., ¶ 15. Third, as found by the district court, Discount Power's script does not even remotely resemble the alleged messages heard by Mr. Worsham. *See Worsham v. Discount Power*, 2021 WL 3100762, at **3 and 7. Finally, during the pending of this action, Mr. Worsham also sued Direct Energy Services, LLC for allegedly receiving numerous telemarketing calls and prerecorded voice messages with spoofed numbers and no call ID. *See, e.g., Worsham v. Direct Energy Servs., LLC*, No. SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021).

Finally, Mr. Worsham did not allege beyond threadbare assertions and legal conclusions that Discount Power used an ATDS (automatic telephone dialing system) to make the alleged calls.  To the extent Mr. Worsham has alleged adequately that Discount Power even initiated the calls at issue—which he failed to do even through the summary judgment stage—Mr. Worsham's failure to provide any factual support concerning the use of an ATDS is fatal to his claims.

## VI. The district court properly dismissed Counts 9-17.

Mr. Worsham argues that the district court erroneously dismissed Counts 9-17 and not recognizing the MDTCPA's private right of action for FCC and FTC violations.  Br. at 32-36.  Mr. Worsham is wrong.  Mr. Worsham, like many of his other claims, attempts to create a private right of action where none exists. The district court properly dismissed Counts 9-17. *See Worsham v. Discount Power*, 2021 WL 3212589, at *5.

### A. The district court correctly dismissed Counts 9-11.

Mr. Worsham alleged in Counts 9-11 that Discount Power's calls violated the TCPA and FCC regulation 47 C.F.R. § 64.1200(b)(1), (b)(2), and (b)(3) , as well as the MDTCPA, for: (1) failing to provide an automated interactive voice or key activated opt out mechanism (Count 9); (2) failing to state clearly the identity of the business, individual or entity responsible for initiating the call (Count 10); and (3) failing to state clearly the telephone number of the business or individual (Count 11).

*See* ECF (Am. Compl. ¶¶ 78-80.).

In *Hurley v. Wayne Cty. Bd. of Ed.*, the court held that provisions of 47 C.F.R. § 64.1200(b) flow directly from the directives of Section 227(d)(3) of the TCPA. No. 3:1-16-9949, 2017 WL 2454325, at *4 (S.D. W. Va. June 6, 2017). The court noted that §§ 227(b)(3) and (c)(5) include language that explicitly states a plaintiff may bring "an action based on a violation of . . . the regulations prescribed under this subsection." *Id.* However, Section 227(d) does not contain this language. *Id.* The court held that "[w]ithout such language in Section (d), the Court is compelled to find that Congress did not intend private parties to enforce either Section 227(d) or the regulations prescribed pursuant to that section. The Court is unwilling to read a private cause of action into Section (d) and its attendant regulations where Congress conspicuously omitted it but explicitly included it in adjacent subsections." *Id.* The district court properly dismissed Counts 9-11, which improperly alleged causes of action based on alleged violations of 47 C.F.R. § 64.1200(b). *See also Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-PHS-DJH, 2017 U.S. Dist. LEXIS 23350, at *3 (Feb. 15, 2017 D. Ariz.) (§ 227(d) does not provide private right of action).

Even if the above subsections provided a private right of actions — which they do not —Counts 9-11 were still nonetheless properly dismissed. Counts 9 and 11 make only bare assertions of a violation, which are insufficient to survive a

motion to dismiss. Additionally, Count 10 was properly dismissed because the Mr. Worsham's very own allegations reveal that Baltimore Gas & Electric allegedly initiated the calls. Mr. Worsham's conclusory and inadequate factual allegations, along with the fact that there does not exist a private right of action for these alleged regulatory violations, required dismissal of Counts 9-11.

### B. The district court correctly dismissed Counts 12-17.

Mr. Worsham alleged in Counts 12-17 violations of the MDTCPA on the basis of alleged violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.1 *et seq*. The MDTCPA provides that a person may not violate the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the TSR. Md. Code Ann., Com. Law § 14-3201(1). Mr. Worsham alleged violations of TSR §§ 310.4(a)(8) (Count 12), 310.4(b)(1) (Count 13), 310.4(d)(1) (Count 14), 310.4(b)(1)(v) (Count 15), 310.8(a) (Count 16), and 310.3(a)(4) (Count 17). ECF 54 (Am. Compl.).

In is well-reasoned and comprehensive analysis, the district court stated:

> As the Maryland Court of Special Appeals held in one of Worsham's previous cases, the MDTCPA has been interpreted to only provide a private right of action when a federal action already exists. *See Worsham v. Ehlrich*, 957 A.2d 161, 172 (Md. Ct. Sp. App. 2008). In order to bring a case under the TSR, a plaintiff must allege actual damages in excess of $50,000. *See* 15 U.S.C. § 6104(a). Worsham now alleges a total of $36,500 in statutory damages under Maryland law, and therefore he cannot meet the $50,000 threshold. (Am. Compl. ¶ 95.) Further,

> he fails to plead facts that suggest Discount Power is a "telemarketer" or "seller," as defined in 16 C.F.R. § 310.2(dd) and (ff), for the same reasons that he fails to establish the calls constituted telemarketing or advertisements. The FCC defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(dd). Similarly, telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(ff). As explained above, the facts alleged do not support Worsham's conclusory allegations that the Defendant made the subject telephone calls, nor that the recorded messages sought to induce the purchase of any goods or services.

*Worsham v. Discount Power*, 2021 WL 3212589, at *6. The district court provided further analysis when it denied Mr. Worsham's motion for reconsideration concerning dismissal of Counts 12-17. *See* ECF 137 at 12-13.

The district court found yet another reason to dismiss Counts 12-17. The district court correctly determined that even the TSR was applicable, Mr. Worsham failed to allege facts to support his conclusory allegations in Counts 12-17. Id. For example, in Count 12, there are no facts asserted to support the claim that the Discount Power failed to transmit complete caller ID information — the Amended Complaint in fact provides a number (Am. Compl. ¶ 15), and the regulation does not always require a name of the telemarketer, 16 C.F.R. § 310.4(a)(8). *Id.*; *See Travel*

*Options*, 2016 WL 4592373, at * 8. Similarly, in Count 16, Mr. Worsham failed to allege any facts that suggest the Discount Power failed to pay the annual fee for the DNC list for his area code. *Id*. In Count 17, Mr. Worsham failed to assert what "misleading" statement was in fact allegedly made by Discount Power. *Id*.

### C. Mr. Worsham fails to allege actual damages, as required to recover under the FTC's Telemarketing Sales Rule.

"To recover damages under the [FTC's TSR], Worsham would have to 'bring a civil action in the appropriate district court in the United States' in which he alleged actual damages exceeding $50,000." *Worsham Direct Energy Servs.*, 2021 WL 948819, at *4 (citing 15 U.S.C. § 6104(a)); *see Worsham v. Discount Power*, 2021 WL 3212589, at *6 ("In order to bring a case under the TSR, a plaintiff must allege actual damages in excess of $50,000."). Mr. Worsham alleged only statutory damages, not actual damages, in his Amended Complaint. *Worsham v. Discount Power*, 2021 WL 3212589, at *6 ("Worsham now alleges a total of $36,500 in statutory damages under Maryland law, and therefore he cannot meet the $50,000 threshold."). Mr. Worsham's brief does not even challenge or mention the district court's ruling on this basis. Br. at 34-36. Instead, Mr. Worsham incorrectly argues that the MDTCPA creates a private right of action. *Id*.

### D. There is no private right of action under the MDTCPA for violations of the FTC's Telemarketing Sales Rule.

There is no private right of action under the MDTCPA for violations of the

FTC's Telemarketing Sales Rule given that the Maryland TCPA "was enacted 'merely to enable a private right of action under the TCPA, not to create new causes of action.'" *Worsham v. Direct Energy Servs.*, 2021 WL 948819, at *4 (quoting *Worsham v. Ehrlich*, 957 A.2d 161, 172 (Md. Ct. Spec. App. 2008); *see also Worsham v. Discount Power*, 2021 WL 3212589, at *6 ("As the Maryland Court of Special Appeals held in one of Worsham's previous cases, the MDTCPA has been interpreted to only provide a private right of action when a federal action already exists." (citing *Ehrlich*, 957 A.2d at 172). Mr. Worsham argues that the district court relied on a Maryland intermediate appellate court decision that was "incorrectly concluded" and "can't be squared." Br. at 35. This Court rejected the same argument regarding *Ehrlich* in 2012 when Mr. Worsham was a party in a different case before this Court, stating that "[i]f the highest court of the state has not decided an issue of law, we generally defer to the state's intermediate appellate courts on the issue." *Worsham v. Accts. Receivable Mgmt. Inc.*, 497 F. App'x 274, 278 (4th Cir. 2012) (quoting *United States v. King*, 673 F.3d 274, 279 (4th Cir. 2012)). Mr. Worsham offers no basis for this Court to overrule its opinion from ten year ago.[7]

---

[7] Mr. Worsham raised the same issue and challenged *Ehrlich* in 2021, claiming that decision was "incorrect" and contained "flawed reasoning," when he appealed the summary judgment decision entered in favor of Direct Energy Services, LLC. *See Worsham v. Direct Energy Servs., LLC*, Appeal No. 21-1677, Doc. No. 11-1 (July 18, 2021) at 37-38.

## VII. The district court properly granted summary judgment on all of Mr. Worsham's remaining claims.

### A. Discount Power is not liable under Mr. Worsham's novel interpretation of 47 U.S.C. § 227(c)(5)

Mr. Worsham argues that the district court erred in summary judgment by not considering TCPA liability under § 227(c)'s "on behalf of" language. Br. at 39-40. Mr. Worsham is wrong. Section 227(c)(5)'s "on behalf of language merely creates liability under "traditional agency law," which the district court properly applied. *See Worsham v. Discount Power*, 2022 WL 3100762 at **4-8.

Section 227(c)(5) does not create liability irrespective of Discount Power's relationship with its telemarketers. Instead, as this Court recently observed, "[w]hile we have no clear definition 'on behalf of' in [Section 227(c)(5)] of the TCPA, we may, at a minimum, assume that federal statutes are written with familiar common law agency principles in mind." *Krakauer v. Dish Network, LLC*, 925 F3d 643 (4th Cir. 2019). Mr. Worsham seemingly argues that the district court erred by requiring an agency relationship to establish Discount Power's liability, Br. at 39-40, but it was precisely this requirement of an agency relationship that this Court affirmed in *Krakauer*. 925 F.3d at 660 (affirming district court decision where "[t]he jury was asked to find whether or not [the telemarketer] was [defendant]'s agent at the time if make the calls relevant to the case."). Given that the district court properly held that there was no traditional agency relationship between the callers and Discount

Power (*Worsham v. Discount Power*, 2022 WL 3100762 at **4-8), there is no liability under § 227(c)(5). *See Worsham v. Direct Energy Servs., LLC*, No. SAG-20-00193, 2021 WL 948819, at **5-6 (D. Md. Mar. 12, 2021) (granting summary judgment in favor of Direct Energy and finding no agency relationship between Direct Energy and its telemarketers), *aff'd*, 2022 WL 1261988 (4th Cir. 2022).

Mr. Worsham incorrectly argues that the "by or on behalf of" liability language is broader than vicarious liability and does not require seller-telemarketer agency to establish vicarious liability. Br. at 39-40. Mr. Worsham misconstrues both the "by or on behalf of" language and *Worsham v. Nationwide Ins. Co.*, 138 Md. App. 487, 504 (2001) case in an effort to evade the agency requirement. Vicarious liability under the TCPA is not unlimited liability – sellers are not strictly liable for all actions taken by their telemarketers. Bradley, 2022 WL 2973979, at *8. Instead, a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defend by the federal common law, between the defendant and a third-party caller." *Worsham v. Discount Power*, 2022 WL 3100763, at *5 (citations omitted). The district court properly held that Discount Power could not be held vicariously liable for calls under an agency relationship. *Id*. at *8.

### B. The TPCA does not impose strict vicarious liability on defendants under the non-delegation doctrine.

Mr. Worsham states that Discount Power is liable "for violating the duties

arising under the federal law pursuant to the Supreme Court's nondelegation doctrine[,]" arguing that "[t]he TCPA modified common law agency principles for the rights of consumers with respect to sellers who target consumers with telemarketing." Br. at 41-42. Mr. Worsham cites no authority for this proposition, nor could he, because it is contrary to the overwhelming number of decisions (including from the Supreme Court) analyzing TCPA liability under traditional agency principles. As the district court correctly stated:

> Echoing *Direct Energy*, "Worsham maintains that the TCPA essentially imposes strict vicarious liability on [Discount Power], because its duty to comply with the statute is non-delegable." *Id.* at *5. "[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *Meyer v. Holley*, 537 U.S. 280, 290 (2003). "The duty is not discharged by using care in delegating it to an independent contractor." *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 395 (1982). "Consequently, the duty creates an exception to the common-law rule that a principal normally will not be held liable for the tortious conduct of an independent contractor." *Id.* at 395–96. This theory was rejected in *Direct Energy* and is equally unavailing here. The FCC and the Fourth Circuit have recognized that "vicarious liability under the TCPA is governed by the federal common law of agency." *Hodgin*, 885 F.3d at 252; *Dish Network*, 28 FCC Rcd. at 6584–86 (declining to extend liability "beyond agency principles to subject the seller to vicarious liability ... [anytime] the call is made simply to aid or benefit the seller—even if agency principles would not impose vicarious liability on the seller for the call."). Additionally, district courts evaluating the TCPA have routinely rejected the assertion that TCPA duties are non-delegable. *See, e.g.*, *Direct Energy*, 2021 WL 2451641, at *4; *Zhu v.*

> *DISH Network, LLC*, 808 F. Supp. 2d 815, 818–19 (E.D. Va. 2011); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 772 (N.D. Ill. 2014) ("Nothing in the TCPA supports imposing liability for third-party telemarketing calls under such a broad theory."). Worsham fails to cite any cases reaching a contrary conclusion.

*Worsham v. Discount Power*, 2022 WL 3100762, at *6.[8]

In a thorough and well-reasoned opinion citing relevant Supreme Court precedent on the non-delegable duty doctrine (including a case cited by Mr. Worsham), the court in *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 772 (N.D. Ill. 2014) explained why the non-delegation doctrine did not apply in the context of the TCPA:

> "[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *Meyer v. Holley,* 537 U.S. 280, 290, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) (quoting *General Bldg. Contractors Assn., Inc. v. Pennsylvania,* 458 U.S. 375, 396, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)). Imposing a nondelagable duty on a principal goes further than traditional vicarious liability principles. *See id.* at 290, 123 S.Ct. 824. It imposes liability on the principal even

[8] The district court in *Worsham v. Direct Energy Servs, LLC*, 2021 WL 948819, at *5 (D. Md. Mar. 12, 2021) previously rejected Mr. Worsham's tired argument: "because its duty to comply with the statute is non-delegable. ECF 81-1 at 15-16. Worsham has not cited any cases establishing a non-delegable duty to comply with the TCPA, and this Court is unaware of any such precedent. In fact, because a plethora of courts and the Federal Communications Commission have analyzed, in various cases, the existence of vicarious liability under traditional agency theories, *see, e.g., Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015); *In re Joint Petition filed by Dish Network, LLC,* 28 FCC Rcd, it seems clear that the non-delegation doctrine is inapplicable to the TCPA, since it would impose strict liability thus making such vicarious liability analyses unnecessary.

> when the principal "has himself done everything that could reasonably be required of him ... and irrespective of whether the agent was acting with or without authority." *See id.* (citation omitted). Nothing in the TCPA supports imposing liability for third-party telemarketing calls under such a broad theory, and "such silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules." *See id.* at 286, 123 S.Ct. 824. The FCC, which is the agency primarily charged with implementing and administering the TCPA, moreover, expressly rejected a proposal to construe the TCPA as concluding that an entity initiates (and thus is liable for) all third-party telemarketing calls made on its behalf. *See FCC Ruling*, 28 F.C.C.R. at 6583 ¶ 27.

Smith, 30 F. Supp. 3d at 772; *see also Armstrong v. Investor's Bus. Daily, Inc.*, No. CV-18-2134,-MWF-JPRX, 2020 WL 2041935, at *12 (C.D. Cal. Mar. 6, 2020) (rejecting plaintiff's argument that a TCPA defendant had a non-delegable duty to comply with the TCPA and holding that "a wealth of cases suggests otherwise"). Mr. Worsham cites no authority for the proposition that, in addition to analyzing TCPA violations under federal common law agency principles, Congress also intended to impose liability on a defendant under the TCPA even when that defendant "has himself done everything that could reasonable be required of him . . . and irrespective of whether the agent was acting with or without authority." *Smith*, 30 F. Supp. 3d 772 (quoting *Meyer*, 537 U.S. at 290). For the reasons articulated by the district court and the cases cited above, there is no non-delegable duty under the

TCPA.

Mr. Worsham cites several cases in support of his novel theory, including by analogy to a civil rights case win which Mr. Worsham compares himself, as telephone user who received telemarketing calls, to African Americans subject to "overt racial discrimination in hiring" at a tobacco plain in the 1950s. *See* Br. at 41 (citing *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971). The *Lorillard Corp*. Court simply held that an employer that indisputably engaged in racial discrimination could not avoid liability by arguing that a seniority system (enshrined in a collective bargaining agreement) effectively forced the employer to discriminate. *See* 444 F.2d at 799. *Lorillard Corp.* says nothing about the law of agency or vicarious liability, much less whether traditional agency principles apply in deciding whether a defendant is liable for the acts of a third party under the TCPA.

Mr. Worsham argues that *State of Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 414 (D. Md. 2011), also imposed liability on principals for acts of a non-agent contractor broadcaster of robocall messages," Br. at 43, but this case is inapposite. In Universal Elections, "the Court concluded that the degree of third-party involvement in a telemarketing scheme was irrelevant, but did so *at the motion to dismiss stage* where plaintiff's allegations that defendants made the calls at issue were necessarily taken as true." *Worsham v. Direct Energy Serv's*, 2021 WL 2451641, at *2 n.3 (emphasis added). In contrast, the district court properly held *at*

*the summary judgment stage* that Discount Power was entitled to judgment as a matter of law. *Worsham v. Discount Power*, 2022 WL 3100762, at *8.

The FCC opinion that Mr. Worsham cites is legally and factually distinguishable, as that case involved a long-distance company that "d[id] not deny" it engaged in "slamming" (changing a customer's phone service without permission) based on referrals from the Psychic Friends Network. *See* Br. at 43 (citing *In Matter of Long Distance Direct, Inc*., 15 F.C.C. Rcd. 3297 ¶ 5 (2000)). That is remarkably different than this case, which does not involve any allegations of slamming or contain any admissions by Discount Power of "slamming" (or any other admissions of any wrongdoing).

Lastly, *Petition of Alva S.S. Co., Ltd.*, 616 F.2d 605, 610 (2d Cir. 1980) is distinguishable, as that case involved the salvage of a ship containing 30,000 gallons of an explosive liquid, justifying the invocation of the "inherently dangerous activity" exception at common law to general principles of vicarious liability. *See* Br. at 43.

## VIII. Mr. Worsham fails to meaningfully cite to the record in support of his informal brief and thus has abandoned any arguments.

The Fourth Circuit deems abandoned arguments that are unsupported by citation to the record. *See Dean v. Daimler Chrysler Life, Disability & Health Care Benefits Program*, 439 F. App'x 265, 266 (4th Cir. 2011) (party "waived appellate review of … arguments" where party "failed to adequately support the arguments

with specific facts and citations to the record, as required by Rule 28 . . . of the Federal Rules of Appellate Procedure."); *United States v. Manlapaz*, 825 F. App'x 109, 116 n.2 (4th Cir. 2020) (party waived argument where he "alleges some specific instances" in support of his argument, but failed to cite to the record).

A significant portion of Mr. Worsham's stated facts and references to the record throughout this brief lack the citation required by the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 28(a)(8)(A) (argument must include citations to "parts of record on which the appellant relies"); Fed. R. App. P. 28(e) (record references must be supported by citation to appendix or original document). The Court should hold that any arguments without record citations have been abandoned by Mr. Worsham.

## Conclusion

Mr. Worsham provides no basis for reversing the district court's discovery rulings, order on motion to dismiss the Amended Complaint, and granting of summary judgment in favor of Discount Power. Accordingly, this Court should affirm the district court's discovery rulings, order on motion to dismiss the Amended Complaint, and order granting summary judgment to Discount Power.

Dated: November 16, 2022

Respectfully submitted,

Brian A. Scotti (Bar # 18249)
Gordon & Rees LLP
1101 King St., Suite 520
Alexandria, VA 22314
Phone: (202) 399-1009
Fax: (202) 800-2999

## Certificate of Compliance

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 10,596 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportional typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully submitted,

Brian A. Scotti (Bar # 18249)
Gordon & Rees LLP
1101 King St., Suite 520
Alexandria, VA 22314
Phone: (202) 399-1009
Fax: (202) 800-2999