In The

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**Appeal Number 22-1942**

MICHAEL C. WORSHAM

*Plaintiff-Appellant*

v.

DISCOUNT POWER, INC.

*Defendant-Appellee*

*Appeal from the United States District Court for the District of Maryland*
Case #1:20-cv-00008-RDB
The Honorable Richard D. Bennett

# INFORMAL REPLY BRIEF OF PLAINTIFF-APPELLANT
# MICHAEL C. WORSHAM

Michael C. Worsham
1916 Cosner Road
Forest Hill, Maryland 21050
(410) 557-6192
michael@magicmichael.net
*Appellant*

## Table Of Contents


Issues for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Reply Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Corrections to Appellee DPI's Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REPLY ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. The District Court erred in awarding discovery sanctions because it had no deposition transcript which was necessary and required to have made a discovery decision. . . . . . . . . . . . . . . 3

II. The District Court erred in denying Worsham's discovery Motions. 5

A. The District Court erroneously denied Worsham's Motion to Compel discovery that was relevant to his claims, DPI's defenses, and agency. . . . . . . . . . . . . . . . . . . 5

B. Worsham diligently pursued discovery, and the District erred in denying an extension where DPI suffered no prejudice. . . . . 8

C. FCC orders discussing telemarketing discovery are relevant to discovery disputes . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. The District Court erred in dismissing the majority of Appellant Worsham's Amended Complaint and in denying treble damages. . . . 9

A. Pleading willful or knowing TCPA violations only requires alleging conduct that was not accidental or inadvertent, which Worsham more than adequately plead . . . . . . . . . . . . . 9

IV. The District Court erred in dismissing Counts 3 and 7, because there is a private right of action under 47 C.F.R. § 64.1601(e)(1). 11

V. The District Court erred in dismissing Counts 4 and 8, because the Amended Complaint plead a violation of § 227(b)(1)(B). . . . . . . . 12

VI. The District Court erred in dismissing Counts 9-17 under the Maryland TCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Table Of Contents

VII. The District Court erred in granting summary judgment for Counts 1 and 2 for violations arising under 47 U.S.C. §227(c)(5) . 14

A. This Court recognizes that 47 U.S.C. § 227(c)(5) imposes "by or on behalf of" liability on sellers . . . . . . . . . 14

B. The non-delegation doctrine imposes TCPA liability on sellers for the acts of their contractors . . . . . . . . . . . . . . . 20

VIII. Appellant Worsham cited to the record in support of his Brief . . . . . 27

## REPLY BRIEF - APPELLANT MICHAEL C. WORSHAM

**1. Issues for Review**

**Issue 1:** **The District Court erroneously dismissed the entire original Complaint, almost the entire Amended Complaint (AC), and claims for willful or knowing violations.**

**Issue 2:** **The District Court erroneously dismissed Counts 3 and 7, because FCC Caller ID regulations at § 64.1601(e)(1) were issued pursuant to 47 U.S.C. §§ 227(b) and (c) and include a private right of action.**

**Issue 3:** **The District Court erroneously dismissed Counts 4 and 8, which stated claims for violating the FCC robocall regulations.**

**Issue 4:** **The District Court erred in dismissing Counts 9-17 and not recognizing the Maryland TCPA's (MD-TCPA) private right of action for FCC and FTC violations.**

**Issue 5:** **The District Court erred in not compelling and extending discovery.**

**Issue 6:** **The District Court erred in summary judgment by not considering TCPA liability under § 227(c)'s "on behalf of" language.**

**Issue 7:** **The District Court erred in summary judgment by not recognizing the non-delegation doctrine, which does not require agency.**

**Issue 8:** **The District Court erred in awarding discovery sanctions without reviewing or even requesting the deposition transcript containing the testimony for which sanctions were awarded.**

## SUMMARY

The lower court erred in dismissing valid federal and MD-TCPA claims. It erroneously denied Worsham's motions to compel discovery from DPI relevant to both DPI's defenses and determining agency, denied a discovery extension to complete call tracebacks, awarded sanctions to DPI, sealed certain documents.

In summary judgment, it erred by refusing to consider claims under § 227(c)(5)'s "on behalf of" liability language which do not require agency, in

rejecting the Supreme Court's non-delegation doctrine, and in denying Worsham, and granting DPI, summary judgment.

**<u>Corrections to Discount Power, Inc.'s (DPI's) Brief</u>**

DPI incorrectly includes as part of its Statement of the Case on page 7 an argument that "The only evidence Mr. Worsham offers in support of his contention that Discount Power called the subject number in a handful of the seven calls is the fact that Discount Power was mentioned in the call.

First, the handful of calls is actually 4 calls, which alone is sufficient to allow a jury to decide whether the calls were made by or on behalf of DPI.

Second, Worsham did provide other evidence: call trace subpoena results demonstrating that DPI's telemarketers called Worsham for the 5 calls which transmitted 201-285-8284 as the Caller ID number. These facts distinguish this case from those DPI cited on page 7.

Third, in footnote 3, DPI misstates another case of Worsham's for having supposedly "conceded this point" that "the mere mention of a defendant's name in a call is insufficient to establish liability under the TCPA." In fact, in that other case (*Direct Energy*), Worsham only acknowledged the unremarkable observation that the mere mention of a seller's product during a call "does not **<u>automatically</u>** create vicarious liability for the seller." (emphasis added). Here that simply means that BG&E, which was falsely and misleadingly mentioned by DPI's agents in their robocall messages in Calls 3-5, is and would not be

**automatically** liable for those calls. That contrasts sharply with the subsequent discussions Worsham had in those same Calls 3-5 with live DPI's sales agents who specifically mentioned and said that they were "Discount Power," and in one call (#4) also said they were in Connecticut, where DPI is located. *See* AC at ¶ 15, and Worsham Affidavit (ECF 276-2) at ¶¶ 11-15.

## REPLY ARGUMENT

Worsham replies, striving to avoid repeat arguments, in the same order to the eight numbered sections of Appellee's Brief, which differ from Worsham's list of the eight Issues for Review.

### I. The District Court erred in awarding discovery sanctions because it had no deposition transcript which was necessary and required to have made a discovery decision.

DPI's Brief at pages 11-14 completely fails to address the core issue here: the Magistrate Judge failed to even request, much less review, the transcript of the overly long 3.5 hour deposition DPI took of Worsham for a case involving 7 phone calls, before making his discovery ruling about that deposition.

A federal court can not make a discovery ruling without considering the substance of the discovery dispute, which here is the deposition transcript. Otherwise it will be accepting one side or the other's assertion about the dispute which invariably is going to be one-sided and incorrect, at least partially.

In this instance, DPI's argument about the deposition was generic and not

specific about a single additional topic it expected to gain by continuing the deposition. DPI actually asserts at p. 12 that it "was not required to identify the topics that Mr. Worsham prevented it from questioning him about at his initial deposition." In reality, there were no more relevant topics for DPI to question Worsham about. If there were any, DPI would have been able to identify them as it was its burden to do in order to obtain a Court ruling requiring Worsham to continue the deposition.

DPI completely failed to address another key fact which is that the Magistrate did have Worsham's Affidavit swearing to the harassing nature and repeated questions in the already overly long 3.5 hour deposition that DPI took of Worsham.

Thus the Magistrate Judge had an Affidavit from Worsham, but only generic attorney argument from DPI that did not specify what DPI had supposedly been deprived or actually needed, and had no deposition transcript to review. DPI's argument contains repeated invective about Worsham, but this does not negate its own failures to meet is motion burden, or that of the Magistrate in failing to review the transcript of the deposition it was making a ruling on. DPI's later placement in the record of the deposition transcript well **after** the Magistrate had already ruled, does not save that ruling from its fundamental defect, or exonerate DPI from failing to produce that transcript earlier when its motion for sanctions was pending.

Imagine if the Magistrate had ruled on the written discovery disputes discussed *infra* in Section II, by accepting Worsham's argument about DPI's written responses, without actually reviewing those responses. That is what the Magistrate did with respect to Worsham's deposition, and this is incorrect.

## II. The District Court erred in denying Worsham's discovery Motions.

DPI does not adequately dispute the relevance of or justify the lower court denial to Worsham of the three discovery items at issue, taken in turn below.

### A. The District Court erroneously denied Worsham's Motion to Compel discovery that was relevant to his claims, DPI's defenses, and agency.

**Interrogatory #11**: This Interrogatory sought:

> **INTERROGATORY 11.**
> Identify for each alleged call any and all persons responsible for ensuring that calls made by you or on your behalf are not made to a number on the National Do Not Call registry.

DPI does not specifically dispute that identifying persons responsible for ensuring its DNC compliance is not relevant to Count 1 or to DPI's affirmative good faith defense.

DPI nonetheless argues at p. 14 that the lower court was correct to deprive Worsham of this relevant information, primarily on the basis that the question "presupposed that Discount Power placed the alleged calls."

This is incorrect because: (1) the question does not presuppose Discount Power placed the calls, as Worsham was well aware through subpoenas that the

calls were physically made by DPI's telemarketing agents, (2) the information is still inherently relevant to DPI's asserted defenses, and also to determining the agency relationship (or proving the lack thereof from DPI's perspective) between DPI and its telemarketers, who by law must share DNC compliance activities. For example, telemarketers are required to use a seller's DNC list subscription account number (SAN). *See* the FTC's "Q&A for Telemarketers and Sellers About DNC Provisions in TSR,"[1] (undated) at question 36 ("If that Seller then procures some type of telemarketing services from a Telemarketer/Service Provider (TM/SP) — for example, purchasing a list, scrubbing a list, or making telemarketing calls on the Seller's behalf — the Seller must share it's SAN with that TM/SP").

**<u>Document Requests 2 and 15</u>:** These seek communications, scripts, and messages that DPI had with its telemarketers Hound Energy, and Xtrasource:

> **<u>REQUEST 2.</u>**
> Produce the documents (including, but not limited to, correspondence, notes, memoranda, and journal entries) which relate to, describe, summarize, or memorialize any communication between you and any person(s) who made telemarketing or lead generation calls on your behalf during November 2019, or anyone known or believed by you to have been acting under the authority of any such person(s), concerning the alleged calls. (*Local Rules, Appendix D, Standard Document Request #3.*)

---

[1] This document from the FTC, which jointly administers the national DNC list with the FCC, is available here: https://www.ftc.gov/business-guidance/resources/qa-telemarketers-sellers-about-dnc-provisions-tsr-0

**REQUEST 15.**

Produce all documents including, but not limited to, email, faxes, correspondence, notes, memoranda, and journal entries, which relate to, describe, summarize, or memorialize any communication between you and Xtrasource-Hound Energy, LLC, during the duration of any dialing, calling or telemarketing campaign during 2019, including but not limited to: contracts or agreements including any supplements or addendums; advertising, script or message content; complaints; do not call requests; compliance with the national do not call list registry; caller ID transmission and compliance; and plaintiff or his phone numbers.

The Magistrate ordered DPI to respond further, but very narrowly limited that to just the 5 day period from November 11-15, 2019 and the 410 area code.

DPI's Brief, and the District Judge's Order approving the Magistrate's Order, did not address all the limitations in the Magistrate's exact wording. That wording was narrowly limited to producing scripts and messages "that would have been applicable to the seven calls at issue during the relevant timeframe in Maryland's 410 area code." ECF 144 at 3. The ordered production either ignored entirely, or imposed the same limitations on, email and other communications, which are vital discovery items.

DPI's Brief also evades the key reality that DPI did not produce any communications with its telemarketers during the limited 5 day window. DPI only produced one or two short email threads with its telemarketer <u>after</u> Worsham filed suit. Thus DPI interpreted the Magistrate's order very narrowly, or simply refused to provide documents, just as Worsham has argued. Sellers and telemarketers have regular ongoing communications, related to both sales,

and compliance. Worsham received **none** of those from DPI. This was compounded by the failure of DPI's telemarketer Hound Energy in responding to Worsham's subpoena and being found in contempt, and further compounded by the lower court's allowing Hound Energy to submit an Affidavit on DPI's behalf. This allowed DPI to present its one-sided version of the facts.

So whether the failed document production was due to the Magistrate's Order's language, or DPI's interpretation of it and refusal to comply, the bottom line is DPI did not produce any pre-lawsuit communications with its telemarketers, and only produced a single supposed script. The lower court erred in not requiring all of this production. Worsham and the courts can't properly analyze the seller-telemarketer relationship, if their communications are kept hidden, as was done here in discovery.

### B. Worsham diligently pursued discovery, and the District erred in denying an extension where DPI suffered no prejudice

DPI's Brief provides no support for its argument that "Worsham had more than ample time to conduct" discovery. DPI failed to address, or even mention, the time necessary to fully complete the call traceback subpoena process. Further, DPI failed to provide the deposition transcript for its own discovery motion, and additional time would have perhaps prompted DPI to provide this transcript, and allow the Magistrate to review it if produced.

### C. FCC orders discussing telemarketing discovery are relevant to discovery disputes.

DPI argues at p. 18 the undisputed fact that the federal rules govern discovery disputes. The FCC knows through its enforcement actions about telemarketers and sellers. In this telemarketing area its rulings are given some deference. In any event, the FCC statement that Worsham cited from the 2013 *Dish Network Ruling* only reiterates and emphasizes, from an expert federal agency that regulates telemarketers, the already obvious idea that evidence of the relationships between sellers and telemarketers can be acquired in discovery. Note that DPI's argument that an FCC ruling about seller-telemarketer relationships should not be considered, contradicts DPI's extreme deference to the FCC's common law agency opinion, an area over which the FCC has no expertise, in the same ruling.

## III. The District Court erred in dismissing the majority of Appellant Worsham's Amended Complaint and in denying treble damages.

The lower court's dismissals of many Counts carried through with the same reasoning from the first Complaint, to the Amended Complaint, and to summary judgment. Some of these are discussed in separate sections *infra*.

### A. Pleading willful or knowing TCPA violations only requires alleging conduct that was not accidental or inadvertent, which Worsham more than adequately plead.

DPI fails to explain how the AC did not put it on notice of the allegations

of willful or knowing violations, which is all a complaint is required to do.

Most of all DPI failed to address the biggest failure of the District Court, which was only addressing the "knowing" component of the statutory language, and not addressing the "willful" component, which can also give rise to treble damages.

DPI's argument on p. 20 that "there is not a single *fact* alleged in any of those paragraphs [¶¶54-67 of the AC]" (italics by DPI) is patently frivolous. As just one example, ¶ 60 alleged these facts: "Defendant intentionally and misleadingly uses the initials and name of BGE, Baltimore Gas and Electric, in its voice messages, because it knows the people in Maryland that it targets recognize BGE, and are more likely to listen to the entire message instead of hanging up." Further, allegations in the entire AC, not just ¶¶54-67, must all be considered in evaluating willful or knowing conduct.

DPI cites (at p. 20) to the lower court's ruling on Worsham's Motion for Consideration, ECF 137 at 13-14, as supposed support for dismissing treble damages claims. In footnote 8, the lower court stated "As neither case resulted in a determination that Discount Power violated the TCPA, Discount Power's knowledge of this litigation is insufficient to establish that it 'should have known' its conduct was prohibited." *Id.*

This statement illustrates how the District Court effectively required Worsham to prove - at the pleading stage - that DPI had already violated the

law, and done so knowingly, in order to satisfy it that Worsham might be entitled to treble damages. This is an incorrect and much higher pleading standard than what FRCP 8(a) requires, which is only "a short and plain statement of the claim," and not proof at the pleading stage that the defendant had violated the law, or knowledge of exactly what is inside a defendant's head. The lower court's "knowing" requirement even exceeded its own requirement in another case which found a knowing violation. *State of Maryland v. Universal Elections*, 862 F. Supp. 2d 457, 463-4 (D. Md. 2012) ("in Henson's role as owner and officer of Universal Elections, he undeniably had reason to know of and should have known about the TCPA disclosure requirements.").

The lower court's failure to consider the "willful" component of 47 U.S.C. § 227(c)(5)'s treble damages position, and excessively high pleading standard expected for the "knowing" component, were erroneous.

## IV. The District Court erred in dismissing Counts 3 and 7, because there is a private right of action under 47 C.F.R. § 64.1601(e)(1).

DPI's first argument (at p. 21) is that because § 64.1601(e)(1) supports other pre-existing DNC rights, it can not be a right of its own. This unavailing argument, like much of DPI's Brief, misses the key issue: determining which subsection of the TCPA the FCC promulgated a regulation under. Worsham's Brief at pages 19-27 addressed this in detail. DPI failed to rebut this.

DPI's argument at p. 23 that the FCC statement that Caller ID should help

its enforcement, sheds no light on identifying from where § 64.1601(e)(1) was promulgated.

DPI argues that a private right can not be created where it does not exist. This is correct, but again misses the issue of determining the source of the FCC's promulgation of § 64.1601(e)(1). DPI's straw man argument (at p. 24) is that "64.1601(e) does not create a private right of action" and "is silent on the matter," ignoring (or conflating) that FCC regulations are requirements, and only Congress creates private rights for those requirements.

The one reported case DPI cites on p. 24, *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784-790 (E.D. Mich. 2020), mostly relied on *Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sep. 2, 2016), a case even the lower court disagreed with regarding a private right for §64.1200(d)(4) violations it allowed in Count 2, making *Travel Options*, and *Dobronski*, unreliable decisions.

## V. The District Court erred in dismissing Counts 4 and 8, because the Amended Complaint plead a violation of 47 U.S.C. § 227(b)(1)(B).

DPI's argument on pages 25-29 are absurd, because it is defending the indefensible: the lower court's failure to recognize claims for prerecorded voice calls in a case specifically about such calls, which recordings are in the record.

DPI unbelievably argues at p. 26 that "The district court properly held that Mr. Worsham failed to state a plausible claim with respect to a discount or

rebate on his already-purchased and paid-for electrical services." First, Worsham did not buy anything from and had no relationship with defendant. There were no "already-purchased" services. Second, a call soliciting a discount rebate would be a commercial call, even for existing services or customers, which again, Worsham was not. The **only** purpose of DPI's calls was commercial.

Equally absurd is DPI's argument at p. 27 that the "district court correctly found that Mr. Worsham failed to allege any facts supporting his claim that the messages encouraged purchase of any products or services." One only needs to read allegations of the prerecorded messages, advertising 30% discounts, transcribed in the AC at ¶¶ 15.

The lower court's dismissal of Counts 4 and 8 was egregiously incorrect.

## VI. The District Court erred in dismissing Counts 9-17 under the Maryland TCPA.

Counts 9-11 are MD-TCPA claims based on FCC regulations. Counts 12-17 are based on FTC regulations.

As usual, DPI at 30-34 misses the key point: MD-TCPA claims do not depend on an existing federal private right of action. Nothing in the MD-TCPA's separate and independent private right requires this. MD Commercial Law Article, § 14-3202. Any court imposing such a requirement is adding words to the MD-TCPA that are not there.

This applies both to DPI's attempts to pigeonhole Counts 9-11 into §

227(d)(3), which has no private right of action, and its absurd arguments that there is no MD-TCPA private right of action for Counts 12-17 because that supposedly requires alleging actual damages of $50,000. The MD-TCPA simply does not say this.

Ironically, the MD-TCPA was passed in response to a court decision at the time the MD-TCPA was passed which had denied the federal TCPA private right. *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.* ,149 Md. App. 219 (2003) (holding no TCPA private right of action), *rev'd by* 382 Md. 689 (2004). This Court should follow the Maryland Court of Appeals, which reversed the earlier denial of the federal private right, and recognize the MD-TCPA's private right based on violations of federal regulation.

## VII. The District Court erred in granting summary judgment for Counts 1 and 2 for violations arising under 47 U.S.C. § 227(c)(5).

### A. This Court recognizes that 47 U.S.C. § 227(c)(5) imposes "by or on behalf of" liability on sellers.

DPI incorrectly argues at p. 35 that the TCPA's "by or on behalf of" liability language in § 227(c)(5) "merely creates liability under traditional agency law," and that "Section 227(c)(5) does not create liability irrespective of Discount Power's relationship with its telemarketers."

Before passing the TCPA in 1991, Congress already established strict vicarious liability in the telecommunications area in 47 U.S.C. § 217, cited in

Worsham's Brief on p. 43. That law provides:

> In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, **shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person**.

47 U.S.C. § 217 (emphasis added). The FCC relies on this law to enforce and prevent the type of evasion DPI seeks. *In the Matter of Long Distance Direct, Inc.*, 15 FCC Rcd. 3297 at ¶ 9, n. 12 (Feb. 17, 2000) ("To hold that the section does not include independent contractors would create a gaping loophole in the requirements of the Act and frustrate legislative intent.").

When Congress added "by or on behalf of language" in the TCPA, it was reaffirming and extending vicarious liability applied to telemarketing, including creating a new private right of action which did not exist previously in 47 U.S.C. § 217. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019) ("In enacting § 227(c)(5) of the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests.").

This Court recognized the plain liability language of § 227(c)(5):

> **By its plain language, the TCPA's private right of action contemplates that a company can be held liable for calls made on its behalf, <u>even if not placed by the company directly</u>.** See 47 U.S.C. § 227(c)(5) (authorizing claims by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" (emphasis added)). While we have no clear definition of "on

> behalf of" in the TCPA, we may, at a minimum, assume that federal statutes are written with familiar common law agency principles in mind. *See Meyer v. Holley* , 537 U.S. 280, 285-86, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003).

*Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019) (all emphasis added). This Court explicitly recognized that companies can be liable even if they did not directly make the offending calls. It questioned exactly what "on behalf of" meant, but in assuming "that federal statutes are written with familiar common law agency principles in mind," this Court did not state that only common law agency governs the TCPA.

The *Krakauer* jury found that Dish Network had an agency relationship with the telemarketer making the calls. Thus *Krakauer* did not decide the specific issue of whether liability attaches under § 227(c)(5) when no seller-telemarketer agency relationship is found, something the District Court found in the instant case (incorrectly and without allowing full discovery). In fact this Court's observation cited above that the "plain language" of § 227(c)(3)'s private right of action "contemplates that a company can be held liable for calls made on its behalf, even if not placed by the company directly" does not state or suggest that under this statutory language, an agency relationship must also be found between a seller and its telemarketer for liability under this provision, in contrast to DPI's argument on page 35. In *Krakauer* this Court explicitly found persons responsible for complying with legal requirements even when

others perform those requirements: "It is a familiar rule of agency, however, that **parties cannot avoid the legal obligations of agency by simply contracting out of them.** *See* Restatement (Third) of Agency, § 1.02 ('Whether a relationship is characterized as agency in an agreement between the parties . . . is not controlling.')." *Krakauer*, 925 F.3d at 660 (emphasis added).

In 2013 the FCC issued a ruling, *In the Matter of The Joint Petition Filed by DISH Network, LLC, et al.*, Declaratory Ruling, FCC 13-54, 28 FCC Rcd 6574 (May 9, 2013) ("2013 *Dish Network Ruling*"). The FCC stated that "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within is power to force the telemarketer to cease that conduct." *Dish Network Ruling* at ¶ 46.

However, the FCC went outside its jurisdiction and area of expertise when it opined about common law agency liability, on which many courts since then have place undue reliance. Ajit Pai, FCC Commissioner and later FCC Chair until 2021, questioned the FCC's the authority to even be making legal decisions regarding common law agency liability: "It is not the Commissions's place to opine on the proper contours of the federal common law of agency." 2013 *Dish Network Ruling*, Statement of Commissioner Ajit Pai, Approving in Part and

Dissenting in Part, at p. 6. Former FCC Chair Pai pointed out that:

> The federal common law of agency is a general body of law that covers numerous agencies. Its ambit extends to labor relations, patents, environmental regulation, telecommunications, and much more. We cannot opine - at least not with the authority afforded judicial deference - on its scope and meaning, particularly as we are announcing its incipient application to TCPA violations only today.

*Id.* Chairman Pai dissented because of the FCC's "limited authority over and expertise in federal agency law principles." *Id.* at p. 7.

Chairman Pai also pointed out in footnote 35 that "a seller might be liable under" 47 U.S.C. § 217, because a seller may be a 'user,' but the FCC did not address this issue in its 2013 *Dish Network Ruling*.

Former Chair Pai was correct that the portion of FCC's *Dish Network Ruling* that opined about federal common law agency liability is not entitled to deference, meaning *Chevron* deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Such deference should not even arise under *Chevron's* two-step test when Congress has spoken on the issue directly, as it has in 47 U.S.C. § 217 and § 227(c)(5). *Chevron* at 842-3.

The FCC's *Dish Network Ruling*, and courts that have followed it, including the District Court below, have impermissibly and effectively changed the word "entity" into "agent" in 47 U.S.C. § 227(c)(5) so that it reads:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same **agent** in violation of the regulations . . .

instead of honoring the actual text of this subsection, which is:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same **entity** in violation of the regulations . . .

47 U.S.C. § 227(c)(5).

The "by or on behalf of" liability language in § 227(c)(5) is different from the liability language in the other private right of action subsection of the TCPA, 47 U.S.C. § 227(b)(3), which provides:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State — (A) an action based on a violation of this subsection or the regulations prescribed under this subsection . . .

*Id.* Courts, including the District Court below, which have interpreted the FCC's *Dish Network Ruling* to require an agency relationship to be established between the seller and telemarketer in order to impose liability on the seller for <u>any and all</u> violations of the TCPA, meaning under both subsections § 227(b)(3) and § 227(c)(5), are impermissibly and erroneously ignoring the "by or on behalf of" liability language in § 227(c)(5), as if they were not there. This Court rejected ignoring the precise words of Congress, in determining that the private right of action is § 227(c)(5) is not limited to telephone subscribers, when it stated: "We assume that Congress chooses its words carefully and does not lightly toss around broad language ('persons') when more precise language ('subscribers') is available." *Krakauer* at 657.

Here, the District Court erred by ignoring Congress's precise "by or on

behalf of" liability language in § 227(c)(5). There is simply no formal seller-telemarketer agency requirement in order to impose liability under § 227(c)(5), regardless of whether that liability is called vicarious or strict. This Court appears to have found that the TCPA, and specifically § 227(c)(5) which was at issue in *Krakauer*, is a strict liability statute. *Krakauer* at 663 ("The features of the private right of action in § 227(c)(5), whether statutory damages **or strict liability**, evince an intent by Congress to allow consumers to bring their claims at modest personal expense.") (emphasis added). This Court indicated that otherwise, this "would contort a simple and administrable statute into one that is both burdensome and toothless. It would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Id*.

Accordingly this Court should reverse, and hold that a formal or traditional agency relationship is not required to impose seller liability under § 227(c)(5).

### B. The non-delegation doctrine imposes TCPA liability on sellers for the acts of their contractors.

DPI's addresses the non-delegation doctrine by relying on circular references to the lower court, a lengthy citation from another District Court case

(*Smith*) that is plainly contrary to the TCPA, a misunderstanding of this Court's *Lorillard* case, and straw man arguments.

It should be noted first that the Supreme Court has not decided its non-delegation doctrine in a TCPA case. It has not been raised in the handful of TCPA cases it has decided so far. Non-delegation has only been raised in a few federal court cases, and no Circuit Court has a written opinion addressing it.

Second, notably, DPI has no good reasons why the non-delegation doctrine should apply to the other types of cases cited in Worsham's Brief, but not apply to the TCPA. As a Supreme Court doctrine, it applies to all federal cases.

DPI cited this Court for the proposition that "vicarious liability under the TCPA is governed by the federal common law of agency." DPI Brief at 37, citing *Worsham v. Discount Power*, 2022 WL 3100762 at *6, citing in turn *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). In fact, what this Court said in full was that "**<u>According to the FCC</u>**, vicarious liability under the TCPA is governed . . ." *Id.* (emphasis added). *Hodgin* did not discuss or analyze § 227(c)(5), and was decided a year before *Krakauer*, which did. However, this quote gets away the point from the issue of the non-delegation doctrine, which neither *Hodgin* or *Krakauer* addressed.

The lower court cited, and DPI cited from, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d. 765, 772(N.D. Ill. 2014). *Smith* is plainly incorrect in

its discussion of the non-delegation doctrine:

> Nothing in the TCPA supports imposing liability for third-party telemarketing calls under such a broad theory, and "such silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules." *See id.* at 286.

*Smith* at 772, citing *Meyer v. Holley*, 537 U.S. 280, 290 (2003) (italics in original).

First, the "on behalf of" liability language in § 227(c)(5) directly and plainly supports imposing liability for third-party telemarketing calls, as this Court has recognized. Second, even though the TCPA is not silent as *Smith* asserts, due to § 227(c)(5), even if it was, *Smith* makes no logical sense in its conclusion that "such silence" permits it to infer that Congress intended to apply *ordinary* background tort principles, but somehow did not intend to apply Supreme Court precedent, which applies and is binding regardless of whether or not it is an "*ordinary*" tort principal.

The lower court also asserted, in a sentence quoted by DPI on page 37, that "district courts evaluating the TCPA have routinely rejected the assertion that TCPA duties are non-delegable." The lower court cited only three cases, which does not constitute routine rulings, and which are all readily distinguished.

The first case the lower court cited for supposed routine rejection of the

non-delegation doctrine is another case of Worsham's decided by the same lower court, *Worsham v. Direct Energy Services, LLC*, SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021). This is a circular or cross-reference of the same court citing itself. The same Judge Bennett being appealed here rejected yet another decision involving Worsham (*Worsham v. Travel Options, Inc.*) in the same lower court, when he granted Worsham's Motion to Reconsider regarding Counts 2 and 6 in ECF 137, demonstrating again the unreliability of this lower court relying on Worsham's cases.

The second case the lower court cited for supposed routine rejection of the non-delegation doctrine is *Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815, 818-9 (E.D. Va. 2011). *Zhu* was not even a TCPA case. Further, *Zhu* found that "the record is devoid of evidence to show a nexus between Dish and the entity that placed the calls to Mr. Zhu," *Id.,* which is in complete contrast to the instant case where it is established that Hound Energy, LLC made the calls on behalf of DPI pursuant to their telemarketing contract.

The third case the lower court cited for supposed routine rejection of the non-delegation doctrine is *Smith v. State Farm*, which is objectively incorrect about the TCPA, specifically § 227(c)(5), as already discussed *supra*.

Thus, other than citing itself in circular and unreliable reasoning, a non-TCPA case (*Zhu*) where there was no nexus at all between the seller and telemarketer and therefore no possible liability under any theory, and *Smith*

which is easily distinguished as incorrect, the lower court did not cite any cases rejecting the non-delegation doctrine.

DPI cited at p. 39 one other case that mention the non-delegation doctrine, *Armstrong v. Investor's Bus. Daily, Inc.*, 2020 WL 2041935, at *12 (C.D. Cal. Mar 6, 2020). *Armstrong* does just and only that - it mentions the words "non-delegation doctrine" a single time, but does no analysis. Further, the "wealth of cases" *Armstrong* supposedly cites, were only two cases, and those cases not only did not "suggest otherwise" regarding the non-delegation doctrine, as DPI mistakenly and misleadingly argues, <u>these two cases did not even mention the non-delegation doctrine</u>. Those two cases which *Armstrong* cited are *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018), and *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, 2019 WL 6907077, at *1 (N.D. Cal. Dec. 19, 2019). They dealt with red flags/duty to investigate (*Kristensen*) and ratification (*Abante Rooter & Plumbing*), not the non-delegation doctrine.

DPI's argument (at p. 39) regarding whether a defendant has "done everything that could reasonably be required of him" is a straw man argument, that ignores both 47 U.S.C. § 217 and § 227(c)(5).

DPI's discussion of *Lorillard* is another straw man argument. It is irrelevant whether or that *Lorillard* "says nothing about the law of agency or vicarious liability," because Worsham cited it for the non-delegation doctrine.

DPI tries at p. 40 to distinguish *Universal Elections*, 787 F. Supp. 2d 408,

414 (D. Md. 2011), which imposed liability on principals for acts of a non-agent contractor broadcaster of robocall messages, on the basis that this decision was made at the motion to dismiss state, and not at summary judgment.

In fact, *Universal Elections* being decided at the motion to dismiss stage makes it even <u>more</u> supportive for holding sellers responsible for the conduct of their independent contractor telemarketers. That is because at the motion to dismiss stage, no discovery has been taken or facts established to support (or deny) agency, so holding that the seller can be liable for their telemarketer contractor liable is purely a legal decision, not dependent on the existence of seller-telemarketer agency.

Later in that same case when summary judgment was granted to the State of Maryland, that court reiterated its finding that "persons who retain the services of outside companies like Robodial may be liable under the TCPA, even if the offending calls are transmitted through the outside service." *State v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012) (granting summary judgment against Universal Elections for the acts of its contractor named Robodial). Notably, *Universal Elections* imposed liability for violations of 47 U.S.C. § 227(d), a subsection of the TCPA that states may enforce, which does not include the broader "on behalf of" liability language in § 227(c)(5).

DPI at 41 makes another straw man argument trying to distinguish the FCC's decision recognizing the TCPA's requirements as nondelegable in *In the*

*Matter of Long Distance Direct, Inc.*, 15 FCC Rcd. 3297 at ¶ 9, n. 12 (Feb. 17, 2000). DPI argues that because *Long Distance Direct* involved "slamming" (changing phone service without permission) admitted to by that company, and because this suit does not involve "slamming," or any admissions by DPI, that this somehow distinguishes the FCC's decision.

DPI's argument is misplaced, because the nature of the wrongdoing ("slamming" vs. DPI's do-not-call and failure to identify violations), and whether or not the wrongdoing is admitted, have absolutely no bearing whatsoever on the validity of the non-delegation doctrine as a legal principle. DPI's straw man argument imagines a liability standard that only applies when the offending party admits to their wrongdoing. Admission of liability (wrongdoing) does arise in a default judgment situation, but this is irrelevant to the discussion of the non-delegation doctrine.

In summary, only a handful of TCPA cases outside the Supreme Court have even mentioned the non-delegation doctrine. Two of those courts, including the lower court here, incorrectly cite cases for a non-existent rejection of the doctrine, and do not explain why the TCPA should be an exception to the Supreme Court's doctrine.

## VIII. Appellant Worsham cited to the record in his Brief.

DPI asserts without any support or citation that a "significant portion of Mr. Worsham's stated facts and references to the record through this [*sic*] Brief lack the citation required by the Federal Rules," and that "The Court should hold that any arguments without record citations have been abandoned by Mr. Worsham."

Besides the mismatch between Worsham's Brief's supposed citation deficiency - regarding stated facts and references to the record - and DPI's requested relief - regarding arguments - DPI failed to identify a single alleged citation deficiency, whether facts, record references, or arguments.

Accordingly, Worsham can't respond to this unsupported argument, and the Court should deny DPI's request.

WHEREFORE this Court should reverse and remand.

Respectfully submitted,

/s/ Michael C. Worsham

Michael C. Worsham, Plaintiff
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192
michael @ magicmichael.net